**KEN'S FOODS, INC., Plaintiff,**

v.

**KEN'S STEAK HOUSE, INC., Defendant.**

**No. CIV.A. 01–11878–NG.**

United States District Court,
D. Massachusetts.

Dec. 11, 2002.

Samuel M. Starr, Paul J. Hayes, Joseph P. Messina, Michael T. Renaud, Howard J. Susser, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Thomas E. Lent, Lurie & Krupp, LLP, Boston, MA, for Plaintiff.

Michael A. Laurano, Julia Huston, Bromberg & Sunstein, John F. Ward, Bromberg & Sunstein, Boston, MA, for Defendant.

### MEMORANDUM OF DECISION AND ORDER ON DISCOVERY MOTIONS RE PRIVILEGE CLAIMS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The plaintiff, Ken's Foods, Inc. ("KFI"), is in the business of manufacturing, packaging and selling bottled salad dressings, marinades, and other food products. The defendant, Ken's Steak House, Inc. ("KSH" or the "Restaurant"), owns and operates a restaurant known as Ken's Steak House in Framingham, Massachusetts. The Restaurant was originally opened and owned by Ken and Florence Hanna. The salad dressing, which was originally created for use in the Restaurant, was produced and marketed by KFI, a company created and jointly owned by Frank and Louise Crowley and the Hannas. Three out of the original four founders are deceased.

This litigation involves a dispute concerning the ownership and right to use the federally registered trademarks "KEN'S" and "KEN'S STEAK HOUSE" as well as pictures depicting the facade of the Restaurant (collectively, the "Marks"). This matter is presently before the court on several discovery motions by and between the parties as well as some non-parties relating to the scope of privileges claimed by the producing entities.[1] As detailed below, this court (1) finds the "common interest privilege" applicable to some documents, however, it is more limited than argued by the producing parties, (2) rejects the claim of "inadvertent disclosure," and (3) finds that the disclosure of certain letters to third parties triggered a "subject matter waiver" as to some documents sought but not others. For these reasons, and as detailed further in the Order

below, KFI's motion to compel the Estate to produce documents (Docket # 97) is DENIED; KFI's motion to compel Michael Hanna to search for and produce documents as well as appear at further deposition (Docket # 98) is ALLOWED IN PART and DENIED IN PART; KFI's motion to compel KSH to produce documents (Docket # 99) is ALLOWED IN PART and DENIED IN PART; and the motion of KSH, Timothy Hanna and Michael Hanna for a protective order (Docket # 104) is ALLOWED IN PART and DENIED IN PART.

## II. STATEMENT OF FACTS [2]

### The Estate

One of the founders of the Restaurant and of KFI, Kenneth Hanna, is deceased. The Estate of Kenneth Hanna (the "Estate") is a party to these motions, although not to the litigation. When Ken Hanna died on November 23, 1995, his three sons, Timothy, Mark, and Michael (Timothy and Michael are referred to hereafter as the "Hanna Brothers"), were co-executors of the Estate, as well as beneficiaries of the Estate. The co-executors employed Attorney James A. McLaughlin to represent them, and he served in that capacity until sometime in 1997.

Due to disputes among the three Hanna Brothers, they were replaced as co-executors in 1998 by Attorney Michael J. Puzo ("Puzo"), of the law firm of Hemenway & Barnes. Attorney Puzo was appointed administrator of the Estate. Mr. Puzo hired his partner, Attorney Charles Fayerweather ("Fayerweather"), to represent him. Attorneys Puzo and Fayerweather either communicated directly with the beneficiaries, or with the beneficiaries' personal attorneys, who included Attorney Thomas Sullivan, counsel to Michael Hanna, and Attorney Michael Laurano, counsel to Timothy Hanna.

---

1.  KFI has filed a Motion to Compel Production against the Estate of Kenneth Hanna (Docket # 97), a Motion to Compel Production and Further Deposition against Michael Hanna (Docket # 98), and a Motion to Compel Production against KSH (Docket # 99). KSH, Timothy Han-

na, and Michael Hanna have filed a Joint Motion for Order Limiting the Scope of Examination (Docket # 104).

2.  The statement of facts is limited to those relevant to the pending motions.

### The Corporations

As noted above, the plaintiff KFI was founded by the senior Hannas and the Crowleys. Following Ken Hanna's death until the present time, Ken's son, Timothy, held a significant portion of the stock of KFI.

The defendant KSH was started by the Hannas. At the time of Ken Hanna's death until the present time, the Estate owned almost 47% of KSH's stock. On September 9, 1999, Michael Hanna entered into an agreement with his brother Timothy to assign his expected interest in KSH to Timothy in exchange for 15% of the monies KSH receives as a result of any legal action which might be brought against KFI relating to the trademarks.[3] Thus, Timothy, in addition to being a shareholder in plaintiff KFI, is a majority shareholder in defendant KSH (his brother Mark having previously transferred his interests to Timothy as well). This suit was commenced on November 1, 2001. KSH filed an answer and counterclaim on January 14, 2002.

### The Disputed Discovery

There are five categories of documents presently at issue in this case. The parties have designated them as (1) the "Disclosed Documents,"[4] (2) the "Category I Documents" (Fayerweather's handwritten notes, memoranda to the Estate's file, and communications between Fayerweather and either Puzo or those acting on Fayerweather's behalf in representing Puzo) (Estate's Supplemental Privilege Log (Pl.'s Mem. Ex. K)),[5] (3) the "Category II Documents" from the Estate's original privilege log (correspondence between Sullivan and Puzo and Fayer-

weather regarding claims against KFI) (Estates Original Privilege Log (Pl.'s Ex. F)), (4) the "Michael Hanna Documents" (correspondence between Sullivan and Laurano addressing trademark claims against KFI) (Michael Hanna's Privilege Log Documents # MPHP 00007–00049 (Pl.'s Mem. Ex. R)), and (5) the "KSH Documents" (correspondence from Sullivan to Laurano, Michael Hanna, and Timothy Hanna regarding KSH's claims against KFI) (KSH's Second Amended Privilege Log Documents # KSHP 00152–KSHP 00163 (Pl.'s Mem. Ex. S)).[6]

KSH, Timothy Hanna, and Michael Hanna (collectively, the "Opposing Parties") also seek a protective order because during Fayerweather's deposition, KFI's questions sought to elicit information the Opposing Parties believe is privileged regarding the merits of KSH's potential claims against KFI. Since it is expected that KFI will seek to elicit identical information from Puzo at his deposition, the parties agreed to suspend Fayerweather's deposition so that the Opposing Parties could seek a protective order.

## III. DISCUSSION

### A. The Common Interest Doctrine.

The Opposing Parties contend that the Sullivan Letter, the Category II Documents, the Michael Hanna Documents, and the KSH Documents are immune from discovery because the Hanna Brothers and the Estate shared a "magic circle" of common interest in evaluating potential trademark claims by KSH against KFI that allowed them to share otherwise privileged attorney-client commu-

---

3. These claims were eventually asserted as counterclaims in the pending litigation.

4. The Disclosed Documents consist of (1) correspondence from James McLaughlin, Esq. to the Hanna Brothers while representing them as the Estate's executors (the "McLaughlin Letters") (Pl.'s Mem. Exs. G, T), (2) a letter from Michael Hanna's current attorney, Thomas Sullivan, Esq., to the Estate's current administrator, Michael Puzo, Esq., asserting the Estate had a cognizable state law trademark claim against KFI (the "Sullivan Letter") (Pl.'s Mem. Ex. H), and (3) a research memorandum Puzo's attorney, Fayerweather, drafted to the Estate's file (the "Fayerweather Memorandum") in response to

the Sullivan Letter (Pl.'s Mem. Ex. I). Because the Estate already disclosed these documents, KFI is not moving to compel these documents but seeks a ruling that these documents are non-privileged.

5. The sole basis KFI believes it is entitled to the Category I Documents is its contention that the Estate waived any privileges on the same subject matter by producing the Disclosed Documents.

6. KSH has added to this category two letters from Michael Hanna and Timothy Hanna to Puzo regarding KSH claims against KFI which were incorrectly omitted from the privilege log.

nications and work product between themselves and their respective counsel without waiving any applicable privileges. The Estate has not taken a position on the applicability of the common interest doctrine to the instant case. KFI argues that the Hanna Brothers' and the Estate's failure to agree beforehand that they were sharing documents pursuant to a common interest relationship and the parties' divergent interests preclude a common interest relationship. This court finds the common interest privilege does come into play, but later in the chronology of events than the Opposing Parties contend.

The common-interest doctrine [7] is: typically understood to apply "[w]hen two or more clients consult or retain an attorney on particular matters of common interest." 3 *Weinstein's Federal Evidence* § 503.21[1] (J.M. McLaughlin, ed., 2d ed.2002); 8 J.H. Wigmore, *Evidence* § 2312, at 603–09 (McNaughton rev.1961). In such a situation, "the communications between each of them and the attorney are privileged against third parties." *Weinstein's Federal Evidence, supra,* § 503.21[1] ... Similarly, the "privilege applies to communications made by the client or the client's 'lawyer to a lawyer representing another in a matter of common interest.'" *Weinstein's Federal Evidence, supra,* § 503.12[2] (quoting Sup.Ct. Standard 503(b)(3)).

*Cavallaro v. United States,* 284 F.3d 236, 249–50 (1st Cir.2002) (citation forms amended; case citations omitted). The common-interest privilege "is not an independent basis for privilege," rather, it is "an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Id.* at 250. This privilege allows "attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Filanowski v. Wal–Mart Stores, Inc.,* No. CIV. 99–147–B, 1999 WL 33117058, at *1 (D.Me. Oct.29, 1999) (quoting *Schachar v. Am. Acad.*

*of Opthalmology, Inc.,* 106 F.R.D. 187, 191 (N.D.Ill.1985)).

In order for the common interest exception to apply, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.,* 874 F.2d 20, 28 (1st Cir.1989). "To qualify for the privilege, the communication must have been made in confidence." *Id.* In addition, "[c]ommunications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interest." *Id.* (quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 787–88 (3d Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985)).

While a written agreement is not a prerequisite for invoking the common interest doctrine, *Power Mosfet Tech. v. Siemens AG,* 206 F.R.D. 422, 426 (E.D.Tex.2000), parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders. *See, e.g., United States v. Schwimmer,* 892 F.2d 237, 243–44 (2d Cir.1989) (finding valid joint defense privilege where information was "imparted in confidence" between parties "who had agreed upon and undertaken a joint strategy"); *United States v. Sawyer,* 878 F.Supp. 295, 297 (D.Mass.1995) (despite similar interests between employer and employee, insufficient evidence that communications were made during the course of a joint defense effort; proponent could neither establish time frame of agreement nor acts creating and/or terminating the agreement); *United States v. United Tech. Corp.,* 979 F.Supp. 108, 110, 112 (D.Conn.1997) (holding common interest doctrine shielded information consortium members shared pursuant to collaboration agreement); *Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 349 (N.D.Oh. 1999) (stating burden is on proponent to

---

**7.** The "common interest" doctrine has the same basis as the "joint defense," "joint client" or "allied lawyer" doctrines. *See Cavallaro v. United States,* 284 F.3d 236, 250 (1st Cir.2002).

"have taken effective steps to ensure that all participants were aware of the need to maintain confidentiality, and to show that mechanisms were in place to accomplish that objective before the information was shared").

■ Based on an *in camera* review of the documents at issue and after consideration of the oral and written arguments of counsel, this court finds that the common interest doctrine precludes the production of some, but not all, of the documents in dispute. In so deciding, this court rejects the Opposing Parties' argument that the mere fact that the Hanna Brothers were beneficiaries of the Estate establishes a common interest. It is obvious from the mere fact that Timothy Hanna is a major shareholder in both the plaintiff and defendant companies that everyone may not be united in their position as to which company owns the trademarks. Similarly, the court rejects the argument that the common interest doctrine applies no later than September 9, 1999, when Michael agreed to assign his expected interest in the Estate in exchange for 15% of the amounts KSH may receive in a trademark suit against KFI. This agreement does not establish either an identity of interest between the Estate and all the beneficiaries nor, and perhaps more importantly, does it establish that the parties agreed to engage in any type of joint effort or to keep information confidential. Based on this court's *in camera* review, an agreement to engage in a joint effort against KFI arose on or about August 1, 2001.

Addressing the specific documents at issue, this court finds that the Sullivan Letter to Puzo reflects an effort to convince counsel that the Estate and Michael Hanna have a common interest—it predates even "communications made for the purpose of undertaking a joint defense," and the doctrine does not apply. *See Power Mosfet Techs. v. Siemens AG*, 206 F.R.D. at 425. Moreover, Puzo's counsel, Fayerweather, forwarded the Sullivan Letter to the IRS. This dissemination mandates the conclusion that the parties did not understand that the communication was to be kept confidential from outsiders. *See United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d at 29

(where there is "no reasonable basis for believing" that the recipient would not share the information with a third party, "there can be no privilege").

The Category II Documents are subject to the common defense doctrine and do not need to be produced. These documents, dated between October 15, 2001 and February 15, 2002, reflect that an agreement had been reached, or was close to being reached, between the Estate and the Hanna Brothers to pursue a claim against KFI. There have been no disclosures of these documents, and by their content they appear to have been intended to be kept confidential.

The Michael Hanna Documents contain a mixture of documents, some of which are covered by the common defense doctrine and others that are not. Again, the critical distinction in this case is whether the parties were acting in furtherance of a joint defense, or whether the documents pre-date any conceivable agreement to cooperate. Based on this courts *in camera* review, the following documents shall be produced:

MPHP 000011–19
MPHP 000021–44 (although handwritten comments may be redacted)
MPHP 000045–46

Similarly, the KSH Documents also contain both documents which are subject to production and those which are not. Applying the standards discussed above, the following document must be produced:

KSHP 000155–163

The motion of KSH, Timothy Hanna, and Michael Hanna for an order limiting the scope of examination is premised on the existence of a common interest defense. For the reasons detailed above, the motion is allowed as to events and conversations taking place on or after August 1, 2001, and otherwise denied.

### B. *Inadvertent Disclosure.*

Although claiming a privilege on other documents produced responsive to KFI's subpoena, the Estate made no claim of privilege with respect to the "Disclosed Documents" (as defined in note 4, *supra*), and produced these documents. There are approximately 53 pages at issue. At the hearing on the

pending motions, it became clear that Attorney Thomas Sullivan, Michael Hanna's counsel, was aware of KFI's subpoena to the Estate. Further, at Mr. Sullivan's request, the Estate had withheld certain correspondence on grounds of attorney/client privilege. However, he did not request that the Disclosed Documents be withheld.

Similarly, at the hearing, KSH's counsel, whom Timothy Hanna had hired to "defend [KSH] in a suit brought against it by [KFI]" (Timothy Hanna Dep. at 258), "plead ignorance" to McLaughlin's role in the history of this case and the significance of the letters. As a result, he had assented to the Estate's producing the letters.

Despite their lack of objection prior to producing the documents, the Opposing Parties contend the Estate "inadvertently" produced the documents and, further, that the stipulated protective order in this case (the "Protective Order") requires KFI to return the documents. KFI argues the Estate voluntarily produced the documents. As detailed herein, this court finds the documents were not inadvertently disclosed.

■ When parties stipulate to a protective order requiring the return of inadvertently produced documents, the agreement is enforceable if the proponent actually produced the document(s) inadvertently and otherwise complies with the terms of the order. *See VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 11–12 (D.Mass.2000) (holding stipulated protective order mandated return of two documents inadvertently produced with approximately 25,000 intentionally produced pages; proponents "established that the production of the materials at issue was not a considered or grossly negligent decision, but the result of inattention, i.e., inadvertence"). Absent an agreement, courts have applied three different approaches to determine if production waives privilege: (1) "the 'never waived' approach which holds that a disclosure that was merely negligent can never effect a waiver because, *a fortiori*, the holder of the privilege lacks a subjective intent to forgo production," (2) the "strict accountability" rule which "effects a waiver of the privilege regardless of the privilege holder's intent or inadvertence," or (3) a middle ground by which the court

considers various circumstances relating to the inadvertent production before deciding whether the privilege has been waived, including "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 290–92 (D.Mass.2000) (denying proponent's motion to compel return of 3,821 documents out of over 70,000 total documents produced), *appeal dismissed*, 232 F.3d 905 (Fed.Cir.2000). All of these approaches, however, are premised on the initial finding that the disclosure was inadvertent.

■ Pursuant to a provision of the Protective Order in the instant case entitled "Inadvertent or Unintentional Production,"

> the inadvertent production of information subject to attorney-client privilege or work product immunity, or the inadvertent failure to designate information as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL," will not be deemed to constitute a waiver of such privilege, immunity, rights, or any other privilege, immunity, or rights that would otherwise attach to such information. Any party receiving inadvertently produced information will forthwith, upon request, return the original and all copies to the party producing such information.

(Confidentiality Stipulation and Protective Order (Joint Opp'n Ex. C) at ¶ 4). While "inadvertence" is not defined, it is clear that the production cannot be intentional to qualify for the Protective Order's refuge. Here, the Estate intentionally produced the documents. Timothy and Michael Hanna, through their counsel, were aware of the subpoena and of the Estate's intention to produce documents in response thereto. Nevertheless, they raised no objection to the documents now at issue. Further, the letters consist of approximately fifty-three pages, too significant a number to be simply overlooked in responding to the subpoena. This court finds that production was not inadvertent and, to the extent the documents were privileged, the privilege has been waived.

### C. The Implications of the Disclosed Documents

Included among the Disclosed Documents is a memorandum to file dated June 20, 2001 by Fayerweather, in which he concluded that neither "Ken or the Steak House had any rights in the terms or images at issue that would permit them to collect licensing fees from Ken's Foods ..." (the "Fayerweather Memo"). Fayerweather sent this memo to the IRS in support of a low valuation of the Estate during an audit. Fayerweather also enclosed with his letter to the IRS the May 10, 2001 Sullivan Letter in which Sullivan concluded, to the contrary, "that a colorable claim exists against Ken's Foods." Also included in the Disclosed Documents are correspondence from James McLaughlin, Esq. to the Hanna Brothers while he was representing them in their capacity as co-executors of the Estate (the "McLaughlin Letters"). KFI contends that the disclosure of these documents resulted in a broad, subject matter waiver entitling KFI to all documents on the same topics (including the Category I Documents), as well as further deposition testimony from Michael Hanna. Because different legal standards apply to the Fayerweather Memorandum and the Sullivan Letter on the one hand and the McLaughlin Letters on the other, this court will address the two groups separately.

### 1. The Fayerweather Memorandum & the Sullivan Letter.

■ The parties seem to agree that, if privileged at all, the Fayerweather Memorandum and the Sullivan Letter fall within the work product doctrine in that they were prepared in anticipation of litigation and were prepared by or for a party's representative. *See* Fed.R.Civ.P. 26(b)(3); *see also Colonial Gas Co. v. Aetna Cas. & Sur. Co.,* 139 F.R.D. 269, 274 (D.Mass.1991), and cases cited. "The work product doctrine is distinct from and broader than the attorney-client privilege .... It is not designed to protect a confidential relationship, but rather to promote the adversary system by protecting the product of an attorney's work." *Id.* at 274–75.

■ Unlike the attorney client privilege, the work product privilege is not necessarily waived merely because the documents were disclosed to a third party. Rather, before finding a disclosure waived work product immunity, the court must consider "(1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential; and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege." *Id.* at 275 (quoting *In re Atl. Fin. Management Sec. Litig.,* 121 F.R.D. 141, 145 (D.Mass.1988)) (citation omitted). In addition, the disclosure of legal analysis during the course of negotiations does not necessarily constitute a waiver of the work product doctrine. As the court stated in *Am. Optical Corp. v. Medtronic, Inc.,* 56 F.R.D. 426 (D.Mass.1972):

> I reject the notion that a party waives its privilege if its lawyer, bargaining on its behalf, contends vigorously and even in some detail that the law favors his client's position on a point in issue—whether that point is the contested validity of a patent, the contested validity of a contract, or some other matter. Bargaining, like litigation itself, partakes of the adversary procedure. Negotiated settlements are to be encouraged, and bargaining and argument precede such settlements. Clients and lawyers should not have to fear that positions on legal issues taken during negotiations waive the attorney-client privilege so that the private opinions and reports drafted by an attorney for his client become discoverable.

*Id.* at 431 (internal citations omitted). Finally, "the broad concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3)." *Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1222 (4th Cir.1976). *Accord Pittman v. Frazer, Jr.,* 129 F.3d 983, 988 (8th Cir.1997), and authorities cited.

■ In the instant case, Fayerweather's disclosure of his own memorandum to the IRS undeniably resulted in the waiver of the privilege for that document as it was a disclosure to an adversary. *See United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 687 (1st Cir.1997) (disclosure to agency which was potential adversary waived work product privilege for that document). However, given that the disclosure was clearly within the context of settlement negotiations, there is no basis for extending the waiver beyond the document itself.

■ Similarly, Sullivan's letter to Puzo was a disclosure to a potential adversary. Even assuming, *arguendo,* that Sullivan did not know that the letter would be forwarded to the IRS, he knew that the Estate had taken a contrary position to his. The Estate and the beneficiaries had not reached any joint defense agreement, but rather as of this date were trying to determine whether there could be any common ground. Thus, Sullivan's letter to Puzo is not privileged. However, the "bargaining" between the parties in an attempt to convince the Estate of the value of claims against KFI, does not warrant waiver beyond the letter itself. "Selective disclosure" is not inconsistent with the work product privilege—even, in some circumstances, disclosure to an adversary. *See In re Sealed Case,* 676 F.2d 793, 818 (D.C.Cir.1982).

### 2. *The McLaughlin Letters*

■ Because the McLaughlin Letters are communications between McLaughlin, acting as counsel for the Hanna Brothers as executors of the Estate, and the Hanna Brothers any privilege protecting the letters arises from the attorney-client privilege. An attorney-client privilege exists "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

8. No such documents have been listed on the privilege log, although it is possible that Michael

*United States v. Mass. Inst. of Tech.,* 129 F.3d at 684 (internal citations omitted).

■ In the context of the attorney-client privilege, even inadvertent disclosures may constitute a waiver of the privilege, and, as a general statement, "a waiver premised on inadvertent disclosure will be deemed to encompass 'all other such communications on the same subject.'" *Texaco P.R. Inc. v. Dep't of Consumer Affairs,* 60 F.3d 867, 883–84 (1st Cir.1995) (quoting *Weil v. Inv. Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 24–25 & n. 13 (9th Cir.1981)), and additional cases cited. "The attorney-client privilege belongs to the client, not to the attorney." *In re Grand Jury Subpoena (Zerendow),* 925 F.Supp. 849, 855 (D.Mass.1995), and cases cited. However, "it is ordinarily the attorney's obligation to claim the privilege on the client's behalf," and the actions undertaken by counsel generally will control whether the privilege has been waived. *See* Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* at 270–71 (4th ed.2001).

■ Since the disclosure of the McLaughlin Letters by the Estate was not even inadvertent, and was done with the prior actual and/or constructive knowledge of the Hanna Brothers, through their counsel, the privilege clearly has been waived. Thus, communications between McLaughlin and the Hanna Brothers on the same subject as those previously disclosed must be produced.[8] KFI's request that Michael Hanna's deposition be continued so that he can be questioned about the McLaughlin Letters and the subject matter of those letters is allowed. Similarly, the request that Michael, who delegated to Sullivan the responsibility for production of documents, undertake an independent search of documents responsive to a subpoena served on him is also allowed. The documents may, however, be reviewed by counsel before production and privileged documents, as defined herein, do not need to be produced.

may have some in his possession.

■ KFI contends further that the "subject matter" waiver engendered by the disclosure of the McLaughlin Letters extends to communications between the successor executor Puzo and his counsel, Fayerweather. This court does not agree.

The Estate, itself, is not a separate legal entity. *See Eubank Heights Apartments, Ltd. v. Lebow*, 615 F.2d 571, 572 (1st Cir. 1980) (noting that Massachusetts does not recognize an estate itself as a legal entity); *see also Crowe v. Di Manno*, 225 F.2d 652, 653 (1st Cir.1955) (holding "a decedent's estate is not a legal entity" and only individuals administering the estate can be sued on estate's behalf). Consequently, McLaughlin was not the Estate's counsel, he was counsel to Puzo. *See Tomlinson v. Flanagan*, 287 Mass. 38, 44–45, 190 N.E. 785, 787 (1934) (attorney is employed by personal representative of estate, not directly by the estate). Stated simply, "[a] lawyer hired by an executor or an administrator is counsel for that legal representative. The attorney is *not the attorney for the estate*." 21 Scott Dunphy, *Massachusetts Practice*, § 19.1 (2d ed.1997) (emphasis added).

When viewed in this context, it is clear that the disclosure of communications between McLaughlin and the Hanna Brothers could not waive privileges for Puzo as the successor administrator and Fayerweather as his counsel. When Puzo became administrator of the Estate and hired Fayerweather as his attorney, they shared a new and different attorney-client relationship, entitling them to any applicable privileges. *Cf. Symmons v. O'Keeffe*, 419 Mass. 288, 300–02, 644 N.E.2d 631, 639–640 (1995) (determining trustee could hire his own attorney and invoke attorney-client privilege). The "waiver" effectuated by the disclosure of the McLaughlin Letters will not be extended to the Puzo/Fayerweather communications.

## IV. *ORDER*

Based on the foregoing, it is hereby ORDERED as follows:

1. KFI's Motion to Compel Production against the Estate of Kenneth Hanna (Docket # 97) is DENIED.

2. KFI's Motion to Compel Production from and Further Deposition of Michael Hanna (Docket # 98) is ALLOWED IN PART and DENIED IN PART as follows:

(a) Michael Hanna shall search for the documents responsive to the subpoena served by KFI. Non-privileged documents (as defined in this Decision and Order) shall be produced along with a privilege log identifying documents withheld within fourteen (14) days of the date of this Order.

(b) Michael Hanna shall produce the following documents: MPHP 11–19, MPHP 21–44 (with handwritten comments redacted), and MPHP 45–46.

(c) Michael Hanna shall appear for his deposition to answer questions regarding the documents for which the privilege has been waived (as defined in this Decision and Order) and communications prior to August 1, 2001 with the Estate, Timothy Hanna or his counsel, and KSH regarding KFI.

3. KFI's Motion to Compel Production from KSH (Docket # 99) is ALLOWED IN PART and DENIED IN PART. KSH is to produce KSHP 155–163 within fourteen (14) days of the date of this Order.

4. The Motion of KSH, Timothy Hanna, and Michael Hanna for a Protective Order (Docket # 104) is ALLOWED IN PART and DENIED IN PART. Depositions can go forward to address the non-privileged documents as defined by this decision and communications between the Estate's representatives, Timothy Hanna, and Michael Hanna (or their representatives) relating to events prior to August 1, 2001.